UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CITY OF ROSEVILLE EMPLOYEES' RETIREMENT SYSTEM, Individually and on Behalf of All others Similarly Situated,<br><br>     Plaintiff,<br><br>     v.<br><br>STERLING FINANCIAL CORPORATION, HAROLD B. GILKEY, and DANIEL G. BYRNE,<br><br>     Defendant. | NO. 2:09-cv-00368-SAB<br><br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** |

Before the Court is Defendants' Motion to Dismiss Consolidated Amended Complaint for Violation of the Federal Securities Laws, ECF No. 113; Defendants' Request for Judicial Notice and Notice of Incorporation, ECF No. 119; and Defendants' Supplemental Request for Judicial Notice and Notice of Incorporation by Reference, ECF No. 126. A hearing on the motions was held on August 13, 2014, in Spokane, Washington. Plaintiff was represented by Christopher P. Seefer and Laura J. Black. Defendants were represented by Barry M. Kaplan and Gregory L. Watts.

This is the second time around for the parties in arguing the Motion to Dismiss and the first time for this Judge. Previously, Judge Shea entered an Order

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 1**

granting Defendants' Motion to Dismiss Consolidated Complaint, but permitting Plaintiff to file an Amended Complaint. Plaintiff did so, and Defendants now move for dismissal on the Amended Consolidated Complaint. In ruling on Defendants' Motion to Dismiss, the Court does not intend to revisit prior rulings made by Judge Shea. Accordingly, this Order will only address new claims and theories that were not presented in Plaintiff's Consolidated Complaint.[1]

**A.    Legal Standard for Plaintiff's Claims**

**1.    Section 10(b) Claim**

Private federal securities fraud actions are based upon federal securities statutes and their implementing regulations. Section 10(b) of the Securities Exchange Act of 1934 forbids (1) the "use or employ[ment] . . . of any . . . deceptive device," (2) "in connection with the purchase or sale of any security," and (3) "in contravention of" Securities and Exchange Commission "rules and regulations." 15 U.S.C. § 78j(b). Pursuant to this section, the SEC promulgated Rule 10b-5, which makes it unlawful:

(1) to employ any device, scheme, or artifice to defraud;

(2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the

_____

[1] The Court adopts Judge Shea's reasoning in granting, in part, and denying, in part Defendants' Requests for Judicial Notice and Notice of Incorporation by Reference. *See* ECF No. 96, at 17-21. Similar to Judge Shea, in resolving Defendants' Motion, the Court finds it unnecessary to consider the truthfulness of the judicially noticeable documents Defendants have submitted. Rather, to the extent the documents contain out-of-court representations, the Court takes judicial notice of the fact that the representations were made, but does not take judicial notice of the truthfulness of the representation. *See Lee v. City of Los Angeles,* 250 F.3d 668, 690 (9th Cir. 2001).

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** ~ 2

light of the circumstances under which they were made, not misleading, or

(3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5 (2004).

Taken together, courts have generally recognized that in order to adequately plead a private securities fraud action, the plaintiff must allege: (1) material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *Police Retirement System of St. Louis v. Intuitive Surgical Inc.*,__ F.3d __, 2014 WL 3451566 (July 16, 2014) (citing *Halliburton Co. v. Erica P. John Fund, Inc.*, __ U.S. __, 134 S.Ct. 2398 (2014).

### 2.    Section 20(a) Claim

In order to prove a prima facie case under Section 20(a) of the Securities Exchange Act of 1934, a plaintiff must prove: (1) a primary violation of federal securities law; and (2) that the defendant exercised actual power or control over the primary violator. *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West. Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003).

Section 20(a) claims may be dismissed summarily if a plaintiff fails to adequately plead a primary violation of section 10(b). *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).

### B.    Pleading Standards

The Ninth Circuit has cautioned that plaintiffs in private securities fraud class actions face "formidable pleading requirements to properly state a claim and avoid dismissal under Fed. R. Civ. P. 12(b)(6)." *Metzler, Inc. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008).

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** ~ 3

### 1. Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to seek dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the nonmoving party, except the Court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot be reasonably drawn from the facts alleged. *Id.*

The court must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on a 12(b)(6) motion to dismiss, *i.e.* documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007).

### 2. Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act ("PSLRA") Pleading Requirements

Federal R. Civ. P 9(b) and the Private Securities Litigation Reform Act (PSLRA) set forth additional pleading requirements. *Reese v. Malone*, 747 F.3d 557, 568 (9th Cir. 2014). Under Rule 9(b), claims alleging fraud are subject to a heightened pleading requirement, which requires that a party "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9. Additionally, the PSLRA requires that the complaint plead with particularity both falsity and scienter. 15 U.S.C. § 78u-4(b)(1),(2).

#### a. Pleading Requirements for Falsity and Materiality

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** ~ 4

Under Rule 10b-5, the complaint must allege "falsity" by specifying each allegedly misleading statement, why the statement was misleading, and if an allegation is made on information and belief, all facts supporting that belief with particularity. 18 U.S.C. § 78u-4(b)(1); *Reese*, 747 F.3d at 568. To meet the materiality requirement of Rule 10b-5, the complaint must allege facts sufficient to support the inference that there is "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Police Retirement Syst.*, 2014 WL 3451566 *4.

### b.    Pleading Requirements for Scienter

Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Reese*, 747 F.3d at 568.  To adequately plead scienter, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A); *Reese*, 747 F.3d at 568. The inference must be that "the defendant made false or misleading statements either intentionally or with deliberate recklessness." *Id.* 569. "Deliberate recklessness means that the reckless conduct 'reflects some degree of intentional or conscious misconduct.'" *Id*. Thus, mere recklessness or a motive to commit fraud and opportunity to do so is not sufficient to establish a strong inference of deliberate recklessness. *Id*. To meet the requirements of the PSLRA, the plaintiff must plead "a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco Partners, LLC*, 552 F.3d at 991.

A "strong inference" of scienter exists if, when the allegations are accepted as true, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 5**

alleged." *Tellabs, Inc.*, 551 U.S. at 324.  It must be more than merely plausible or reasonable. *Reese*, 747 F.3d at 569.

Ultimately, the Court must ask: "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs, Inc.*, 551 U.S. at 323. In doing so, "the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs." *Metzler*, 540 F.3d at 1061 (emphasis in original). Recently, the Ninth Circuit instructed that courts should conduct a holistic review of the allegations to determine whether they combine to create a strong inference of intentional or deliberate recklessness, while also keeping in mind the individual allegations and the inferences drawn from them. *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 703 (9th Cir. 2012). Stated another way, courts are to examine individual allegations in order to benchmark whether they are actionable, but also consider the allegations collectively to examine the complaint as a whole. *Police Retirement System*, 2014 WL 3451566 at *4.

C.     **Plaintiff's Consolidated Amended Complaint**

Plaintiff is bringing a putative class-action lawsuit, alleging securities fraud on behalf of all persons who purchased or otherwise acquired publically-traded securities of Sterling Financial Corporation between July 23, 2008, and October 15, 2009 (the "Class Period"). Plaintiff is suing Sterling Financial Corporation and its top officers for violations of the Securities Exchange Act of 1934 and the U.S. Securities and Exchange Commission Rule 10b-5.

Defendant Sterling Financial Corporation is a bank holding company operating through its two main banking subsidiaries—Sterling Savings Bank and Golf Savings Bank. During the Class Period, Sterling Savings Bank was the largest commercial bank headquartered in Washington with over $12 billion of assets and one of the largest regional community banks in the western United

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 6**

States.

Defendant Harold Gilkey co-founded Sterling and was, at all relevant times, President, CEO, Principal Executive Officer, Chairman of the Board at Sterling, and a director of Sterling Savings Bank. He was also Chairman of the Board and CEO of Golf Savings Bank, and director of Intervest-Mortgage Investment Company, a wholly owned subsidiary of Sterling Savings Bank.

Defendant Daniel Byrne joined Sterling in 1983. At all relevant times, he was Sterling's CFO, Executive Vice President of Finance, and Assistant Secretary. He was also Assistant Secretary of Sterling Savings Bank and Golf Savings Bank during the relevant time period. Mr. Byrne is a Certified Public Accountant.

According to Plaintiff, Gilkey and Byrne possessed the power and authority to control the contents of Sterling's communications to the market, including quarterly and yearly SEC filings, press releases, conference call statements and presentations to securities analysts, portfolio managers, and institutional investors. They were provided with copies of the Company's reports, press releases and communications alleged to have been misleading prior to their issuance and had the power, control, means, ability and opportunity to prevent their issuance or cause them to be not misleading.

On December 13, 2006, federal banking agencies issued the Interagency Policy Statement on the Allowance for Loan and Lease Losses (ALLL). This statement revised the 1993 policy statement on the ALLL to ensure consistency with Generally Accepted Accounting Principles (GAAP). Plaintiff alleges that Defendants failed to follow this statement, and as a result, overstated its earnings and capital during the Class Period.

Between 2007 and 2009, the levels of adversely classified and nonperforming construction loans held by Sterling Financial Corporation increased as the residential real estate market was in the midst of an unprecedented and rapid decline. During the Class Period, Sterling Financial Corporation filed

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 7**

ten quarterly (10-Q) reports with the SEC and also issued press releases that summarized the reports. Notably, during this time, the allowance for credit losses increased from $168.7 million in 2Q08 to $355.4 million in 4Q09.[2] Non-performing assets increased from $303.4 million in 2Q08 to $987.4 million in 4Q09. Non-performing construction loans increased from $240.9 million in 2Q08 to $682.7 million in 4Q09.

In October, 2008, the Federal Deposit Insurance Corporation (FDIC) and the Washington Department of Financial Institution (WDFI) conducted a joint safety and soundness exam. According to Plaintiff, during this exam, it was determined that Sterling was improperly including "potential" cash flows from loan guarantors when determining the level of loan losses on collateral-dependent loans. A Report of Examination detailing the findings was mailed to the Sterling Financial Corporation Board on January 28, 2009. Following the completion of the joint field visit in June, 2009, the FDIC and WDFI prepared a Notice of Charges, and issued a joint Report of Visitation.

On October 12, 2009, the Sterling Financial Corporation Board fired Gilkey and Heidi Stanley, the CEO of Sterling Savings Bank. According to Plaintiff, they were fired because they had concealed from the Board the numerous unsafe and unsound practices discovered by the regulators. On October 15, 2009, Sterling Financial Corporation consented to the issuance of a Cease & Desist Order, which required the bank to cease and desist from engaging in unsafe and unsound banking practices discovered by the FDIC and WDIC. The Cease & Desist Order required Sterling Financial Corporation to implement numerous corrective actions,

_____

[2] The Court adopts the parties' methodology for referring to fiscal quarters and years. Thus, fiscal quarters are identified as xQyy, with "x" being the quarter and "yy" being the last two digits of the year. For example, 2Q08 represents the second quarter of 2008 and 4Q09 represents the fourth quarter for 2009.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 8**

including:

- retain management capable of restoring all aspects of the bank to a safe and sound condition
- assure effective oversight by the Board of Directors
- increase capital
- cease paying dividends
- review and revise ALLL and ALLL policy
- plan to reduce nonperforming assets (NFA)
- adopt and implement policy prohibiting loans to problem borrowers
- develop and adopt a plan to reduce commercial real estate loans
- develop a strategic plan to improve profitability and risk.[3]

Press releases issued by Sterling Financial Corporation immediately prior to and during the Class Period included the following statements attributed to Gilkey:

**July 22, 2008**

Early in this credit cycle, we implemented stringent measures to address softening credit quality. During the last three quarters, our credit team has generally identified, quantified and isolated the distressed assets, which primarily reside in our residential construction portfolio. Our credit department has also intensified its efforts toward credit resolution and we expect that it will take several quarters to resolve the issues related to non-perfoming assets. We are encouraged by the results we are seeing. We, however, remain cautious as parts of the Pacific Northwest continue to see pockets of credit deterioration.

---

[3] On September 27, 2010, the FDIC and the WDFI terminated the Cease and Desist Order after Sterling Financial Corporation improved regulator relations, raised additional capital, enhanced governance, transformed the bank's culture and operations, and complied with the requirements of the Cease and Desist Order.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 9**

**October 21, 2008**

  Sterling's results reflect some dislocations in the Pacific Northwest economy caused by a variety of factors, including global disruptions to the financial system and the Boeing union strike. These events created a slowdown in the sale of residential product and thereby affected our borrowers and elevated our credit costs. The Pacific Northwest is insulated, but not isolated, from the broader economy. Still, the Pacific Northwest remains relatively strong. Operationally, Sterling's execution was solid. We slightly reduced the size of our balance sheet while shifting our mix of assets away from residential construction. We grew our deposits. We controlled operating costs. Our liquidity and capital positions remained strong. Our credit administration team proactively managed loan portfolio risk. In sum, we are managing through a difficult credit cycle while maintaining a safe, sound and secure banking practice.

**January 27, 2009**

During the fourth quarter of 2008, we witnessed acceleration in the slowdown of the economy, which caused higher levels of credit stress among our borrowers and an elevation in the level of both our non-performing and classified assets. We, therefore, modified our approach in determining the fair market value of loans identified as impaired. The weakening economy, the increased charge-offs and declines in real estate appraisal values led to the higher level of credit provisioning in the quarter.

Additionally, the January 27, 2009 Press release included the following language:

  Sterling has been proactively addressing credit quality issues within its construction portfolios. During the fourth quarter of 2007, Sterling made a strategic decision to reduce its level of residential construction commitments. During the first quarter of 2008, Sterling activated a Residential Construction Special Project Team to identify, manage and resolve credit quality issues. During the third quarter of 2008, Sterling separated its credit administration team into two dedicated teams: one to fix, repair and manage construction assets; and, the other to focus on generating strategic business and consumer assets. "Throughout the year, Sterling's bankers have been working in partnership with our borrowers to help avoid credit defaults and protect the bank from losses. Because of our efforts at early

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 10**

intervention and remediation, we believe our level of classified assets continues to be manageable and will eventually lead to beneficial resolutions," stated Mr. Gilkey.

Sterling modified its methodology in determining the fair value of loans being tested for impairment during the quarter. The fair value is now determined excluding the potential cash flows from certain guarantors. To the extent that these guarantors are able to provide a viable source of repayment, a recovery would be recorded upon receipt.

In addition to the higher provisions during the quarter, in many cases, Sterling re-assessed the accounting for real estate loans treated as collateral dependent. As a result, Sterling now considers any impairment on a collateral-dependent loan to be a confirmed loss and charges off the impairment amount when the impairment is identified, rather than establishing a specific allowance on impaired collateral-dependent loans that would have been charged off when foreclosure was probable. As a result of this change, the allowance for specific impairment was reduced by approximately $163.9 million and is not reflected as part of net charge-offs.

## July 23, 2009

. . . "Throughout this credit cycle, Sterling has acted proactively to maintain health capital ratios and a strong liquidity position. Our commitment is to continue maintaining a safe, sound and secure banking practice for the benefit of customers, shareholders and employees, said Mr. Gilkey.

Plaintiff obtained pleadings and internal company documents filed by Sterling in borrower bankruptcy proceedings and in numerous lawsuits Sterling filed against delinquent borrowers. According to Plaintiff, these documents establish that Sterling was underreporting the level of nonperforming construction loans and losses in 2Q08 and 3Q08, and that Sterling made loans to borrowers when they had defaulted on other loans.

///
///
///

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 11**

During the Class Period, the price of Defendants' stock fell 80% from the start of the period to the end of the period, and fell 92% from the highest price during the class period.

Although Plaintiff's Amended Consolidated Complaint is 133 pages, Plaintiff's claims can be consolidated into two theories:

(1)  Defendants made materially false and misleading representations when they assured investors that Sterling was maintaining safe, sound and secure banking practices because the evidence demonstrates that it was not doing that; and

(2) Defendants made materially false and misleading representations that they were accurately reporting its financial results because the evidence demonstrates that Sterling was not properly classifying assets (identifying them as problem loans), not recording adequate loan loss provisions and charge-offs, and not maintaining an adequate ALLL (Allowance for Loan and Lease Losses). ECF No. 103.

The CAC identifies those actions by Defendants that Plaintiff characterizes as "unsafe and unsound" banking practices.[4] Plaintiff's theory is that if Defendants

---

[4] The CAC identified the following unsafe and unsound practices: (1) including "potential" cash flows from loan guarantors when determining the level of loan losses on collateral-dependent loans; (2) giving unsecured loans to construction loan borrowers so they could make payments on the construction loans; (3) making loans to borrowers when they had defaulted on other loans; (4) failing to maintain an adequate ALLL; and (5) failing to obtain updated appraisals or valuations. It also alleges Defendants falsely represented that Sterling had implemented stringent measures, *i.e.* had identified problem assets in the construction loan portfolio; made false and misleading statements about the reasons for the unexpected loan loss and goodwill impairment charge; falsely

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 12**

promised Sterling was engaging in safe, sound, and secure banking practices and it was not, then Defendants made material misrepresentations to its investors.

**D.    Analysis**

Securities regulation serves many useful purposes, including: (1) to insure the maintenance of fair and honest markets, 15 U.S.C. § 78b; *Basic Inc. v. Levinson*, 485 U.S. 224, 230 (1988); (2) to provide investors with full disclosure of material information concerning public offerings of securities in commerce, *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976); (3) to protect investors against fraud, *id.*; and (4) to promote ethical standards of honesty and fair dealing, *id*. However, the Securities Act of 1932 does not serve to provide investors with broad insurance against market losses. *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 344 (2005); *see also Basic*, 485 U.S. at 353 (White, J.) (cautioning against allowing a Rule 10b-5 action to be converted into a scheme of investor's insurance). That said, the Court is cognizant that it must balance the purposes of the Securities Act against the purpose of the heightened pleading requirements as set out in the Private Securities Litigation Reform Act, which is to protect defendants from the cost of discovery and trial in unmeritorious cases. *See Tellabs, Inc.*, 551 U.S. at 336 (J. Stevens, dissenting) ("The basic purpose of the heightened pleading requirements in the context of securities fraud litigation is to protect defendants from the costs of discovery and trial in unmeritorious cases.").

Also, during the Class Period, the Court notes that the United States, and indeed the world, was experiencing a global recession, rising unemployment, widespread layoffs, bankruptcies, and foreclosures—all significant economic and social circumstances that could contribute to lower stock prices. *See Dura*, 544 U.S. at 343 ("When the purchaser subsequently resells such shares, even at a lower

represented considerable slowdown in the growth rate of classified assets and falsely represented that the level of classified assets had stabilized.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** ~ 13

price, that lower price may reflect, not the earlier misrepresentations, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price.").

These considerations provide the lens through which the Court addresses Defendants' Motion to Dismiss.

### 1.    Scienter

Plaintiff's claims are based upon statements made by Defendants Gilkey and Byrne and in the official filings signed by these individuals. They attempt to satisfy the pleading requirement regarding corporate scienter with evidence Gilkey and Byrne had the necessary mental state.

Here, Plaintiff has not met its burden of adequately pleading scienter. Plaintiff faces a high hurdle in attempting to do so in this case in light of the fact that Sterling's independent auditors consistently provided unqualified opinions regarding Sterling's financial reports, and the FDIC never required it to restate any of its financials, despite the issuance of the cease and desist order, and the FDIC's unilateral power to force companies to restate inaccurate financials. *See* 12 U.S.C. § 1818(b); *see also Nolte v. Capital One Fin. Corp.*, 390 F.3d 311, 316 (4th Cir. 2004) ("Had Federal Regulators determined that Capital One's past practices were deficient, they could have applied corrective measures retroactively and forced the company to restate its earnings to reflect retroactive adjustments.")

Generally, allegations of scienter based on GAAP violations do not create the requisite strong inference of scienter unless Plaintiff's complaint alleges more. *Worlds of Wonder Sec. Litig.*, 35 F.3d 1407, 1426 (9th Cir. 1994).  In the Ninth Circuit, plaintiffs must plead particular facts showing that "the accounting practices were so deficient that the audit amounted to no audit at all, or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 14**

would have made the same decisions if confronted with the same facts." *DSAM Global Value Fund v. Altris Software, Inc.,* 288 F.3d 385, 390 (9th Cir. 2002) (citation omitted). "[M]ere allegations that an accountant negligently failed to closely review files or follow GAAP cannot raise a strong inference of scienter." *Id.*

Plaintiff primarily relies on the testimony of Confidential Witness 4 (CW4) to support its allegations of scienter. A complaint relying upon statements from confidential witnesses must pass two hurdles to satisfy the PSLRA pleading requirements. *Zucco*, 552 F.3d at 995. First, the confidential witnesses must be "described with sufficient particularity to establish their reliability and personal knowledge. *Id.* Second, the statements themselves must be "indicative of scienter." *Id.*

CW4 was an executive at Sterling throughout the Class Period until he/she left the company in 2010. CW4's responsibilities included general financial management, including financial reporting. The CAC attributes the following facts to CW 4:

(a) During the 2008 and 2009 field visit, the FDIC determined the bank was not properly classifying loans;

(b) During the 2008 examination, the FDIC discovered and directed the bank to discontinue the unsafe and unsound practice of making unsecured loans to construction loan borrowers that were used to make payments on their loans;

(c) During the 2008 examination, the regulators informed Sterling that including potential cash flows from construction loan guarantors was contrary to regulatory and accounting guidance;

(d) Gilkey insisted on setting the level of loan loss provisions in the 2008 budget to 40 million dollars;

///
///
///

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** ~ 15

(e) CW4 heard from other bank personnel that the Board of Directors fired Gilkey and Stanley because they were surprised by the Cease and Desist Order and the findings of the regulators during the 2008 examination and 2009 field visit;

(f) Gilkey stated that the bank needed to hit certain numbers so it could obtain capital through Troubled Asset Relief Program ("TARP");

(g) Gilkey overruled other bank executives by continuing to originate "higher risk construction loans in 2007," which contributed to the increase in classification and loan losses in 2008;

(h) Sterling made unsecured loans to Patrick McCourt, a real estate developer;

(i) regulators downgraded many of the bank's internal classifications; and

(j) Sterling approved loans that exceeded loan-to-value ratios.

CW4's testimony does not meet the *Zucco* requirements because the testimony fails to establish CW4's personal knowledge and reliability, and also fails to be indicative of scienter. CW4 does not claim to have communicated directly with Gilkey or Byrne. Many of CW4's allegations rely on multiple levels of hearsay and speculation. He/she does not identify a single email, date, author, recipient, or specific content of any communication. CW4 does not identify any specific examples of downgrades or loans exceeding ratios. CW4 does not report any statements made by the individual defendants that suggest that they knew Sterling was not operating in a safe and sound manner, or that it was falsely reporting its financials. At most, CW4's testimony may indicate possible motive and opportunity, but it does not rise to the level of demonstrating intent. *See Reese*, 747 F.3d at 569 ("Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not independently sufficient."). Without more, CW4's testimony is not indicative of scienter. It does not establish that Gilkey or Byrne made false or misleading statements either knowingly, intentionally or with deliberate recklessness. CW4's

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 16**

testimony suggests that a healthy and robust internal debate took place at Sterling. This is expected, particularly during a time of unprecedented economic uncertainty.

The facts of the case actually negate any inference of scienter. It is undisputed that Defendants Gilkey or Byrne did not trade a single share of stock to capitalize on the alleged artificial inflation. Defendants held on to their stock at a time when it is alleged they were fraudulently inflating the stock, and as a result, they too experienced a significant loss in their stock value. Similarly, Defendants Gilkey and Byrne received less in compensation during the Class Period than they received before the Class Period. In fact, Gilkey declined a salary increase when it was offered to him. Moreover, Plaintiff has not alleged or identified any contemporaneous information or documents that conflicted with Defendants' public representations.

The Court has reviewed Plaintiff's allegations holistically, and the allegations do not create an inference of scienter that is nearly as compelling as the far more likely alternative inference, namely that Defendants underestimated the risk in their loan portfolios and failed to timely appreciate the near melt-down of the construction, real estate, and financial markets. Plaintiff's allegations suggest that Defendants may have exercised poor business judgment, but not that they engaged in fraud. Plaintiff's allegations, reviewed collectively still do not evince such fraudulent intent or deliberate recklessness as to make the inference of scienter cogent.

### 2. Misrepresentations of Operating in Safe and Sound Manner

Plaintiff alleges Defendants falsely represented that Sterling was operating in a safe and sound manner. Plaintiff contends that Defendants were doing the

opposite, namely operating in an unsafe and unsound manner.[5]

Statements of mere corporate puffery, "vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers," are not actionable because "professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives." *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1111 (9th Cir. 2010); *Glen Holly Ent., Inc. v. Tektronix, Inc.*, 352 F.3d 367, 379 (9th Cir. 2003) (finding no liability where the alleged misstatements "were generalized, vague and unspecific assertions, constituting mere puffery upon which a reasonable consumer could not rely."). Statements that lack a standard against which a reasonable investor could expect them to be pegged are puffery. *See In re Wet Seal Inc. Sec. Litig.*, 518 F.Supp.2d 1148 (C.D. Calif. 2007).

Judge Shea found that the term "safe and sound" constitutes immaterial corporate puffery, and was not an actionable term in a securities fraud claim. Judge Shea also found that the statements in the Cease and Desist Order, *i.e.* that it had reason to believe Sterling was operating in an unsafe and unsound manner, did not provide support for Plaintiff's claim. The Court adopts Judge Shea's reasoning.

In addition, the Court finds that the term, "safe and sound banking practices" does not have a specific and formal regulatory and definitional

---

[5]In its CAC, Plaintiff identifies the following unsafe and unsound practices: (1) improperly including "potential' cash flows from loan guarantors when determining the level of loan losses on collateral-dependent loans; (2) giving unsecured loans to construction loan borrowers so they could make payments on the construction loans; (3) making loans to borrowers when they had defaulted on other loans; (4) failing to maintain an adequate ALLL; and (5) failing to obtain updated appraisals or valuations.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** ~ 18

meaning, notwithstanding the CAC's citation to various banking regulations, SEC rules and regulations, and GAAP. Notably, the FDIC Manual states the following:

> The concept of unsafe or unsound practices is one of general application which touches upon the entire field of operations of a banking institution. It would, therefore, be virtually impossible to catalog with a single all-inclusive or rigid definition, the broad spectrum of activities which are included by that term. Thus, an activity not necessarily unsafe or unsound in every instance may be so in a particular instance when considered in light of all relevant facts pertaining to that situation.

ECF No. 116, Ex. 18 at 269.

Further, the Court finds that the term "safe and sound" is too general and would not cause investors to rely upon it. If this generalized statement could provide the basis for a securities fraud claim, the heightened requirements set out in the PSLRA would be meaningless. Additionally, Defendants' use of the phrase "safe and sound" practices was not unreasonable or reckless. Defendants' use of the phrase was not an extreme departure from the standards of ordinary care and did not present a danger of misleading buyers or sellers.

Moreover, Defendants' positive statements, such as "Sterling implemented stringent measures to address softening credit quality;" "took a conservative approach towards risk evaluation;" "accelerated loans going into nonperforming status" whenever there were "indications of concern;" and Defendants' credit administration team was proactively managing portfolio risk" are not more than puffery that does not give rise to any securities fraud violations. *See ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 205 (2nd Cir. 2009) (holding that the following statements were too general to cause a reasonable investor to rely upon them: statements regarding "highly disciplined risk management" and "standard-setting reputation for integrity."). The Second Circuit noted that no investor would take such statements seriously in

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 19**

assessing a potential investment because almost every investment bank made these statements. *Id.* ("Finding the JPMC's statements constitute a material misrepresentation would bring within the sweep of federal securities laws many routine representations made by investment institutions. We decline to broaden the scope of securities laws in that manner."). Similarly, Defendants' statements that its credit practices were stringent, conservative, and disciplined are generalizations regarding its business practices, and thus, are not actionable.

Consequently, Plaintiff's reliance on the terms "safe and sound" to anchor its claim that Defendants made materially false and misleading representations fails to meet the materiality requirements of the PSLRA.

### 3. Misrepresentations about Sterling Financial Corporation's Financial Results

Plaintiff asserts that, during the Class Period, Defendants falsely represented that Sterling was accurately reporting its financial results. Plaintiff contends Defendants failed to accurately classify assets, thereby underreporting the level of nonperforming construction loans and loan losses.

A general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation. *In re Daou Sys., Inc.*, 411 F.3d 1006, 1016 (9th Cir. 2005) (quoting *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 203 (1st Cir. 1999)). "To properly state a claim for account fraud, plaintiffs must plead facts sufficient to support a conclusion that defendant prepared the fraudulent financial statements and the alleged financial fraud was material." *Id.* When pleading irregularities in revenue recognition, the plaintiffs must plead (1) basic details as the approximate amount by which revenues and earnings were overstated; (2) the products involved in the contingent transaction; (3) the dates of any of the transactions; or (4) the identities of any of the customers or company employees involved in the transactions. *Id.* Ultimately, the Court must discern whether the alleged violations were minor or technical in

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** ~ 20

nature, or whether they constituted widespread and significant inflation of revenue. *Id.* The plaintiff must show with particularity how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position. *Id.*

Plaintiff has not met its burden to provide sufficient details of the alleged fraudulent financial statements. Moreover, the failure of any agency to require Sterling to restate its financials, the failure of the Cease and Desist Order to specifically address any of the alleged accounting errors/misrepresentations, and the fact that Plaintiff has not alleged that any external auditors counseled against Sterling's accounting practices weigh against Plaintiff's allegations of accounting fraud.

Plaintiff's calculations using missed payments to demonstrate the reported amount of underperforming loans was understated does not take into account the fact that the schedule of principal payments changes throughout the course of the year. Thus, its calculations do not provide support for its claim of accounting fraud. Similarly, Plaintiff's calculations using the bankruptcy pleadings fails to take into consideration what portion of the $170.9 million of nonperforming construction loans became nonperforming in 2Q08 and in 3Q08; fails to distinguish between loans to construction companies and construction loans, fails to plead the maturity dates for some of the loans, and erroneously includes interest, fees, and other charges in the total amount of the loans. Plaintiff's use of the loan amounts gleaned from the bankruptcy proceedings is speculative.

In short, Plaintiff has failed to allege that the statements made by Defendants were misleading. Nothing in the quarterly statements was intended to give a reasonable investor an impression of a state of affairs that differed in a material way from the one that actually existed. *See In re Cutera Sec. Litig.*, 610 F.3d at 1108. Plaintiff's speculative approach in alleging that Defendants falsely

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 21**

represented that Sterling's financial reporting was accurate fails the particularity requirements of the PSLRA.

### 4.  Fraud by Hindsight

Case law makes clear that a plaintiff may not plead "fraud by hindsight," *i.e.* a complaint may not simply contrast a defendant's past optimism with less favorable actual results. *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) *abrogated on other grounds by South Ferry LP, No.2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) ("The purpose of this heightened pleading requirement was generally to eliminate abusive securities litigation and particularly to put an end to the practice of pleading "fraud by hindsight.").

Although Plaintiff's complaint contains additional allegations to demonstrate unsafe and unsound practices and fraudulent financial reporting, such as unwise lending practices, overstatement of goodwill in 2Q08 and 3Q08, false and misleading statements about the reasons for the unexpected loan losses and goodwill impairment, failing to maintain an adequate ALLL, and failing to obtain updated appraisals or valuations, these allegations reflect an in-hindsight assessment of Defendants' performance and conduct during a time of unprecedented global economic collapse. These allegations do not meet the pleading requirements of the PSLRA. *See Novak v. Kasaks*, 216 F.3d 300, 309 (2nd Cir. 2000) ("[A]llegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud."). Without specific allegations that Defendants either knew or recklessly disregarded the falsity of its own statements at the time the statements were made, the fact that the statements later turned out to be false is irrelevant to a cause of action under the PSLRA.

It is worth noting at this point that Defendants' public statements immediately before and during the Class Period were not exclusively positive or optimistic. Defendants consistently recognized that the economy was in turmoil

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
CONSOLIDATED AMENDED COMPLAINT ~ 22**

and that Sterling was struggling to identify and properly value troubled assets. Defendants were exercising legitimate business judgment in a transparent manner. The fact that some of these decisions and judgments proved later to be wrong is not actionable.

### 5.    Section 20(a) Claim

Because Plaintiff has failed to adequately plead a primary violation of section 10(b) of the Securities Exchange Act of 1934, Plaintiff's section 20(a) claim is summarily dismissed. *See Zucco Partners, LLC*, 552 F.3d at 990.

### 6.    Leave to Amend

Fed. R.Civ. P. 15 instructs the Court to freely give leave to amend when justice so requires. However, "where the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC*, 552 F.3d at 1007.

Here, Plaintiff's underlying premise in its original consolidated complaint and its amended consolidated complaint is that Defendants engaged in unsafe and unsound banking practices, and investors were misled when Gilkey reassured them Sterling was practicing safe and sound banking practices. The Court has twice found that the use of the term "safe and sound" by Gilkey cannot support a securities fraud claim. Additionally, the Court has twice found that Plaintiff's allegations regarding its accounting and financial reporting may reflect poor business judgment, but they do not rise to the level of securities fraud. Plaintiff has essentially re-plead the same legal theories with some additional facts that do not change the outcome of the case. Consequently, the Court finds that granting Plaintiff's leave to amend would be futile and would result in undue prejudice to Defendants as this litigation has been pending for over five years.

Plaintiff's request for leave to amend is denied.

///

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** ~ 23

Accordingly, **IT IS HEREBY ORDERED:**

1.  Defendants' Request for Judicial Notice and Notice of Incorporation, ECF No. 119, is **GRANTED**, in part, and **DENIED**, in part.

2.  Defendants' Supplemental Request for Judicial Notice and Notice of Incorporation by Reference, ECF No. 126, is **GRANTED**, in part, and **DENIED**, in part.

3.  Defendants' Motion to Dismiss Consolidated Amended Complaint for Violation of the Federal Securities Laws, ECF No. 113, is **GRANTED.**

4.  The above-captioned case is **dismissed**, with prejudice.

**IT IS SO ORDERED.** The District Court Executive is hereby directed to file this Order, provide copies to counsel, and close the file.

**DATED** this 17th day of September, 2014.



Stanley A. Bastian
United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT ~ 24**